```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   SOUTHERN DISTRICT OF GEORGIA
                          DUBLIN DIVISION
```

```
JASON SWALLOW and CATHY          *
SWALLOW,                         *
                                 *
     Plaintiffs,                 *
                                 *
          v.                     *     CV 323-064
                                 *
EAN HOLDINGS, LLC, et al.,       *
                                 *
     Defendants.                 *
                                 *
```

**O R D E R**

Presently pending before the Court are Defendants' motion to dismiss for failure to state a claim and alternatively for improper venue (Doc. 20) and Defendants' motion to transfer venue (Doc. 21).[1]  For the following reasons, Defendants' motion to dismiss (Doc. 20) is **GRANTED IN PART AND DENIED AS MOOT IN PART** and Defendants' motion to transfer (Doc. 21) is **DENIED AS MOOT.**

### I. BACKGROUND

On August 7, 2023, Plaintiffs sued Defendants, alleging: (I) negligent failure to settle; (II) bad faith failure to settle; (III) breach of contract; and (IV) seeking attorneys' fees and

---

[1] The Parties also filed a joint motion for a hearing.  (Doc. 27.)  The Court held a hearing on July 10, 2024; thus, the Parties' motion for a hearing (Doc. 27) is **DENIED AS MOOT.**

expenses.  (Doc. 1, at 11-18.)  Plaintiffs are the assignees of claims originally vested in Tommie Williams.  (Id. at 1-2.) Defendant EAN Holdings, LLC ("EAN") rents motor vehicles to the public under rental agreements for a period of not more than ninety days.  (Id. at 3.)  Defendant Enterprise Leasing Company – Southeast, LLC ("Enterprise") also rents motor vehicles to the public, and EAN is the titled owner of all vehicles rented from Enterprise. (Id.)  With the consent of EAN, Enterprise rents EAN's vehicles in Georgia to authorized users under rental agreements between the renters and Enterprise as the rental company.  (Id.) EAN also rents its vehicles in Georgia to users under rental agreements between the renters and EAN as the rental company.  (Id. at 4.)

On February 14, 2022, EAN and Enterprise rented a 2020 Infiniti QX80 (the "Vehicle") to Williams pursuant to a rental agreement (the "Rental Agreement").  (Id.)  EAN obtained a certificate of insurance ("COI") from the Georgia Office of Commissioner of Insurance and Fire Safety, which certified EAN to transact the business of automobile self-insurance with respect to automobile liability and motor vehicle accident insurance.  (Id. at 5.)  The limit of bodily injury liability coverage EAN offered under the COI was $25,000.  (Id.)  Plaintiffs allege Williams was an insured under the Rental Agreement and the COI.  (Id.)

2

On February 15, 2022, Williams caused a collision with a vehicle driven by Jason Swallow in Richmond County, Georgia (the "Collision"). (Id. at 6.) As a result of the Collision, Jason Swallow suffered serious and permanent injuries, and Cathy Swallow suffered the loss of attention, comfort, society, and consortium of her husband. (Id.) On May 9, 2022, Plaintiffs sued Williams in the Superior Court of Richmond County (the "Underlying Lawsuit"). (Id. at 10; Doc. 1-1, at 34.) Defendants received notice of the Underlying Lawsuit and provided Defendant ELCO Administrative Services Company d/b/a Rental Claims Services ("RCS") a courtesy copy of the complaint, summons, and discovery requests. (Doc. 1, at 10.) RCS is an affiliate of EAN and Enterprise and acted as their authorized agent and third-party claims administrator during all relevant times. (Id. at 4.) Defendants declined to defend Williams in the Underlying Lawsuit. (Id. at 10.) Plaintiffs obtained a default judgment against Williams in the Underlying Lawsuit for $10,158,211.51 plus interest, and Defendants refused to satisfy the judgment against Williams. (Id. at 10-11; Doc. 1-1, at 52.) Williams assigned Plaintiffs all claims he has or may have against Defendants. (Doc. 1, at 11.)

Plaintiffs claim that under the explicit and implied terms of the Rental Agreement and COI, EAN and Enterprise agreed to defend and indemnify Williams for the damages he became legally liable

3

for on account of his use of the Vehicle during the Rental Agreement. (Id. at 5.)  In support of their claims, Plaintiffs allege their counsel notified EAN of the Underlying Lawsuit and requested the applicable limits of coverage. (Id. at 7.) Jenna Cates, a RCS employee, responded and informed Plaintiffs that RCS handles claims on behalf of Enterprise. (Id.) Ms. Cates requested a copy of the summons and complaint in the Underlying Lawsuit for RCS to take the appropriate steps to defend should litigation commence. (Id. at 7-8.) Plaintiffs allege EAN and Enterprise provided the primary layer of coverage for Plaintiffs' loss on behalf of Williams. (Id. at 8.) On March 15, 2023, Plaintiffs' counsel sent a time-limited demand letter to RCS under O.C.G.A. § 9-11-67.1, offering to accept the $25,000 liability limit in exchange for a limited liability release for Williams, among other conditions (the "Demand"). (Id.) To accept the Demand, RCS had to comply with certain conditions, including making the $25,000 payment within 40 days of receipt of the Demand. (Id. at 9.) In response to the Demand, Ms. Cates sent Plaintiffs' counsel a full and final release, listing Enterprise, EAN, RCS, and Williams as releasees. (Id.) But RCS did not pay $25,000 within 40 days of its receipt of the Demand; thus, RCS did not accept the Demand. (Id. at 9-10.)

Based on these actions, Plaintiffs allege Defendants owed and voluntarily undertook a duty to Williams to act with ordinary care

4

in handling Plaintiffs' claims against him, and the Underlying Lawsuit could have been settled had Defendants acted reasonably and with ordinary care. (Id. at 11-12.) Plaintiffs allege Defendants breached their duty and acted negligently, causing Plaintiffs to obtain a judgment for $10,158,211.52 plus interest instead of $25,000. (Id. at 12-13.) Plaintiffs argue the relationship between Defendants and Williams created by the Rental Agreement and COI was equivalent to an insured/insurer relationship, so Defendants owed and voluntarily undertook a duty to Williams to act in good faith in handling Plaintiffs' claims against him. (Id. at 14.) However, Plaintiffs assert Defendants breached their duty and acted in bad faith, causing Plaintiffs' claims to settle for more than the $25,000 limit. (Id. at 15.) Finally, they allege the Rental Agreement and COI were binding contracts between Williams and EAN and Enterprise, and Defendants breached their obligations under the contracts by failing and refusing to defend and indemnify Williams in the Underlying Lawsuit. (Id. at 16-17.)

On September 28, 2023, Defendants moved to dismiss and to transfer venue. (Docs. 20, 21.) Plaintiffs opposed both motions. (Docs. 23, 24.) Defendants replied in support of their motion to dismiss (Doc. 32), and Plaintiffs replied (Doc. 34). The Court also held a hearing and heard argument on both motions on July 10,

5

2024. (Doc. 44.) Thus, the motions have been fully briefed and are ripe for the Court's consideration.

## II. LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint

6

pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

"Venue is governed by the general venue statute, 28 U.S.C. § 1391, special venue statutes, and 28 U.S.C. §§ 1404 and 1406, which address improper venue and change of venue." Peterson v. Smith, No. CV 113-119, 2013 WL 12156416, at *2 (S.D. Ga. Dec. 9, 2013) (citation omitted). A party may request a venue change when: "(1) venue is improper, so a court must then dismiss or transfer the case under section 1406; or (2) venue is proper, but the court should apply section 1404 to transfer the case to another district on convenience grounds." Id. Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "[T]he decision whether to transfer a case is left to the sound discretion of the district court." Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 985 (11th Cir. 1982).

7

## III. MOTION TO DISMISS

Defendants move to dismiss Plaintiffs' Complaint in full pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). (Doc. 20, at 1.) They argue Plaintiffs' three substantive claims fail because they lack any legal authority for the existence of any duties they allege were breached in negligence, bad faith, or contract law, and venue is improper. (Id. at 1-2.) Defendants assert the duties Plaintiffs allege only apply to insurers and insurance contracts and have no applicability to the Rental Agreement or COI. (Id. at 4.) In response, Plaintiffs assert Defendants voluntarily undertook duties to defend and indemnify Williams, and Defendants do not address these allegations, so Counts I and II can proceed. (Doc. 23, at 6-7.) They also assert it is plausible the Rental Agreement, COI, Georgia regulations, and Georgia case law impose duties on Defendants to defend and indemnify Williams. (Id. at 8.) Finally, Plaintiffs argue none of Defendants' arguments about their breach of contract claim have merit. (Id. at 12-14.) The Court addresses the Parties' arguments below.

**A. Failure to State a Claim**

Defendants argue there is no relationship, contractual or otherwise, upon which Plaintiffs can base their substantive claims. (Doc. 20, at 10-20.) The Court addresses each claim.

8

1. <u>Counts I and II: Negligent and Bad Faith Failure to Settle</u>

Plaintiffs assert the relationship between Defendants and Williams created by the COI and Rental Agreement was equivalent to the relationship between an insured and insurer. (Doc. 1, ¶¶ 68, 80.) They assert that, under such relationship, Defendants owed Williams a duty to act with ordinary care and in good faith when handling Plaintiffs' claims against him. (<u>Id.</u> ¶¶ 69, 81.) Alternatively, Plaintiffs assert Defendants voluntarily undertook these duties when handling Plaintiffs' claims against Williams. (<u>Id.</u> ¶¶ 70, 82.) Defendants argue these claims fail as a matter of law because Defendants are not insurers, did not contract to insure Williams, and owed him no duties as an insurer. (Doc. 20, at 10.) The Court notes that there can be no negligent or bad faith failure to settle claim without coverage under an insurance policy. <u>See</u> <u>Nipper v. Progressive Mountain Ins. Co.</u>, No. CV 123-085, 2024 WL 1242470, at *9 (S.D. Ga. Mar. 22, 2024) (citation omitted).

    a. *Contractual Relationship*

Defendants argue the COI and Rental Agreement do not create the equivalent of a relationship between an insured and insurer. (Doc. 20, at 10-18.) In response, Plaintiffs assert the Rental Agreement and COI impose duties on Defendants. (Doc. 23, at 8.) First, the Court looks at the explicit language of the Rental

Agreement and COI.[2]  As to Defendants' responsibility to third parties, the Rental Agreement explicitly states:

> Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law neither Owner or its affiliate extends any of its motor vehicle financial responsibility or provides insurance coverage to Renter, AAD(s), passengers or third parties through the Contract. . . . Owner's or its affiliate's obligation is limited to the applicable state minimum financial responsibility amounts.

(Doc. 20-1, ¶ 8.)  The very next paragraph states:

> Renter shall defend, indemnify and hold Owner or its affiliate(s) harmless from all losses, liabilities, damages, injuries, claims, demands, costs, attorney fees and other expenses incurred by Owner and/or its affiliate(s) in any manner from this rental transaction, or from the use of Vehicle or Optional Accessories by any person, including claims of, or liabilities to, third parties.  Renter may present a claim to Renter's insurance carrier for such events or losses; but in any event, Renter shall have final responsibility to Owner or its affiliate(s) for all such losses.

(Id. ¶ 9.)  And then the following paragraph provides: "Except as required by law, Owner or its affiliate do not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage

---

[2] Typically, at the motion to dismiss stage, the Court can only look to the four corners of the complaint.  See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).  However, the Court may "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018); see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").  As such, the Court considers the Rental Agreement and COI.

. . . or Uninsured/Underinsured Motorist Protection . . . through the Contract." (Id. ¶ 10.)

Under Georgia law, the construction of a contract, like the Rental Agreement, "is a question of law for the court." Am. Empire Surplus Lines Ins. v. Hathaway Dev. Co., 707 S.E.2d 369, 371 (Ga. 2011). "Where the contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written." Jones v. Golden Rule Ins., 748 F. App'x 861, 864 (11th Cir. 2018) (citation omitted). The clear language of the Rental Agreement states Defendants did not provide Williams insurance coverage beyond what is required by state law. (Doc. 20-1, ¶ 8.) It also provides that Williams shall indemnify Defendants for any losses arising out of his use of the Vehicle. (Id. ¶ 9.) Thus, the Court finds the Rental Agreement does not create an insurance contract between Williams and Defendants. The plain language leaves no question on this. As a result, there can be no insurer/insured relationship from the Rental Agreement.

Turning to the COI, the Court reaches the same outcome. The COI provides EAN is "certified to transact in the State of Georgia the business of automobile self-insurance in accordance with O.C.G.A. Section 33-34-5.1, related to automobile self-insurers, and the Rules and Regulations promulgated thereunder." (Doc. 1-1, at 10.) O.C.G.A. § 33-34-5.1 provides a person may qualify as a self-insurer if "such person has and will continue to have the

11

ability to provide coverages, benefits, and claims-handling procedures substantially equivalent to those afforded by a policy of vehicle insurance."  The Georgia Legislature mandates minimum coverage for public policy purposes so innocent people injured in automobile accidents can recover at least $25,000.  O.C.G.A. § 33-7-11; Auto-Owners Ins. v. Jackson, 440 S.E.2d 242, 243-44 (Ga. Ct. App. 1994) (referring to prior version of statue with lower minimum coverage requirements).  Companies like EAN obtain a COI from the State to show they will provide the minimum $25,000 in coverage for a given vehicle, rather than having a third-party insurance company do so.  Issuing a COI does not create an insurance contract between the renter and EAN, and Plaintiffs cite no authority to dispute this finding.  Plaintiffs argue the COI is the "substantial equivalent" of an insurance contract; however, the assurance of $25,000 in coverage does not carry with it the contractual duties to defend and indemnify.  (Doc. 1, at 16; Doc. 23, at 9-10.)  As Defendants point out, they are not "insurers" under the Georgia Insurance Code, and the COI "has the clear purpose of proving to the State of Georgia that EAN can pay $25,000 in accordance with Georgia's statutory [minimum financial responsibility ("MFR")] amounts."  (Doc. 20, at 8-9.)  The Court agrees and finds there is no insurance contract between Williams and Defendants created by the COI.

12

Based on the foregoing, the Court finds Plaintiffs fail to allege a relationship between Williams and Defendants created by either the Rental Agreement or COI that is equivalent to the relationship between an insurer/insured.  The Court now turns to Plaintiffs' other basis for liability.

      b. *Voluntary Undertaking*

Defendants make no argument in their motion to dismiss about voluntarily undertaking these duties.  (See Doc. 20.)  However, after Plaintiffs' response (Doc. 23), Defendants argued Plaintiffs cannot support their assertion of a voluntary undertaking of a duty to defend or indemnify.  (Doc. 32, at 10-13.)  The Parties further developed their arguments on the voluntary undertaking at the hearing, so the Court finds it ripe for consideration.

Defendants argue that an existing duty negates the possibility of voluntary assumption and since the Georgia MFR statute places an obligation on Defendants to pay up to a minimum amount, the duty to satisfy the $25,000 limit is preexisting.  (Doc. 32, at 10-11.)  Defendants assert they tried to comply with their preexisting obligations to pay $25,000 once RCS received the signed release, but the release was not received.  (Id. at 12.)  They also argue that since Plaintiffs obtained a default judgment against Williams, this demonstrates no effort by Defendants to voluntarily undertake his defense.  (Id.)  Plaintiffs respond by arguing that whether a defendant voluntarily undertakes a duty is

13

a question of fact.  (Doc. 34, at 2-3 (citing Rymer v. Polo Golf & Country Club Homeowners Ass'n, Inc., 780 S.E.2d 95, 102 (Ga. Ct. App. 2015)).)  Plaintiffs argue Defendants' actions, including seeking a release of Williams's personal liability, constitute a voluntary undertaking.  (Id. at 3.)  They assert that after Defendants elected to undertake this duty, they failed to pay the $25,000 when presented with an opportunity to settle, and this breach caused damages to Williams.  (Id.)

Plaintiffs' Complaint alleges "Defendants voluntarily undertook a duty to act with ordinary care when handling Plaintiffs' claims against Williams."  (Doc. 1, ¶ 70.)  It alleges "Defendants voluntarily undertook a duty to act in good faith with handling Plaintiffs' claims against Williams."  (Id. ¶ 82.)  These two statements, Plaintiffs urge the Court, sufficiently allege that Defendants voluntarily undertook duties to Williams.  (Doc. 23, at 7.)  The Court disagrees.

"Under well-established Georgia law, a person may be held liable for the negligent performance of a voluntary undertaking." Rymer, 780 S.E.2d at 102 (citation omitted).

> Under this principle, one who undertakes to do an act or perform a service for another has the duty to exercise care, and is liable for injury resulting from his failure to do so, even though his undertaking is purely voluntary or even though it was completely gratuitous, and he was not under any obligation to do such act or perform such service, or there was no consideration for the promise or undertaking sufficient to support an action ex contractu (sic) based thereon. When one undertakes an

14

>act that he has no duty to perform and another person reasonably relies upon that undertaking, the act must generally be performed with ordinary or reasonable care.

Id. (citations omitted). "[W]hether such a relationship exists between the parties 'such as that which would authorize the finding of an independent harm is a question of fact to be resolved by a jury.'" Monitronics Int'l, Inc. v. Veasley, 746 S.E.2d 793, 800 (Ga. Ct. App. 2013) (citation omitted). But the Parties fail to point out, and the Court is unaware of, any case law in Georgia pertaining to voluntary undertaking in the insurance duty to defend and duty to indemnify context. Plaintiffs rely on Rymer to argue their allegations create a jury question on whether Defendants voluntarily undertook a duty to Williams. (Doc. 34, at 2-3.) However, Rymer is distinguishable from this case as it is not in the insurance context. Rymer deals with whether a defendant breached a legal duty when it announced it would repair neighborhood drainage facilities but failed to do so. 780 S.E.2d at 102. Plaintiffs also rely on Osowski v. Smith, 586 S.E.2d 71 (Ga. Ct. App. 2003) to argue this is a question of fact. (Doc. 23, at 7.) Once again, Osowski is distinguishable because it is not in the insurance context, but rather deals with whether a landowner voluntarily undertook a duty to invitees to restrain his dogs. 586 S.E.2d at 72. The Court is reluctant to apply the voluntary undertaking theory to a new area of law without precedent that it is in any way applicable to the realm of insurance duties.

15

However, "[e]ven assuming that the voluntary undertaking theory, which provides that a person may be held liable for the negligent performance of a voluntary undertaking, is applicable here, '[o]ne of the essential elements of this claim is reasonable reliance by the injured person upon the voluntary undertaking.'" St. Joseph's Hosp. of Atlanta, Inc. v. Hall, 806 S.E.2d 669, 674 (Ga. Ct. App. 2017) (citation omitted).  There are no allegations that Williams relied on Defendants, or EAN, to perform these duties on his behalf.  In fact, Plaintiffs explicitly allege "Defendants declined to provide a defense to Williams in the Underlying Lawsuit."  (Doc. 1, ¶ 63.)  Without any allegations that Williams was aware Defendants or RCS voluntarily undertook a duty to settle, defend, or indemnify on his behalf, then Defendants cannot be held liable based on a theory of voluntary undertaking.  The Court finds this scenario more like Simmons v. Flint, Connolly & Walker, LLP, 893 S.E.2d 873 (Ga. Ct. App. 2023) in which the Georgia Court of Appeals found a closing attorney did not owe a non-client a duty based on the voluntary undertaking theory.  The Georgia Court of Appeals reasoned that a closing attorney taking acts required to close the transaction for his or her client are not voluntary undertakings that impose a duty of care to someone who is not the client.  Id. at 878 (citing Driebe v. Cox, 416 S.E.2d 314 (Ga. Ct. App. 1992)).  This is like the facts here because Ms. Cates at RCS worked on behalf of Enterprise, and not Williams.  (Doc. 1, at 7.)

16

There are no allegations she made gratuitous promises to Williams nor allegations that Williams relied on her or believed she was representing his interests in the settlement. In other words, like the closing attorney in Simmons, Ms. Cates took actions, like sending Plaintiffs a release that listed Williams as one of the releasees, that were part of her normal practice of carrying out a settlement. 893 S.E.2d at 878. These actions are not themselves voluntary undertakings that could impose a duty of care to a party not in contract with her. See id.

Based on the above, the Court finds Plaintiffs failed to allege Defendants voluntarily undertook a duty to defend or indemnify Williams. The Complaint lacks allegations that Williams in any way relied on actions taken by Defendants, or RCS on behalf of Defendants. Furthermore, the Court refuses to manipulate a preexisting legal theory into a new area of law where it has no prior applicability. Thus, the Court finds Plaintiffs' allegations that Defendants voluntarily undertook a duty to act with ordinary care and in good faith when handling their claims against Williams are insufficient to state a claim against Defendants for negligent or bad faith failure to settle. (Doc. 1, ¶¶ 70, 82.)

    c. *Conclusion*

The Court finds Plaintiffs failed to allege a contractual duty to settle between Defendants and Williams created by the

17

Rental Agreement, COI, or voluntarily undertaken.  Without a contractual duty, there can be no claims for negligent or bad faith failure to settle.  See Green v. Allstate Fire & Cas. Ins., No. 2:15-CV-205, 2018 WL 2057356, at *5 (N.D. Ga. Mar. 27, 2018) (holding there can be no bad faith for failure to settle a claim where there is no coverage under the policy).

Based on these findings, Plaintiffs' claims for negligent failure to settle and bad faith failure to settle fail as a matter of law because Defendants are not insurers, did not contract to insure Williams, and owed Williams no duties as an insurer either contractually or voluntarily.  Thus, Defendants' motion to dismiss is **GRANTED** on Counts I and II.

2. Count III: Breach of Contract

Plaintiffs assert the Rental Agreement was a binding contract between Williams and EAN and Enterprise, and the COI was a binding contract of insurance between Williams and EAN and Enterprise. (Doc. 1, ¶¶ 92-95.)  They allege Defendants breached their obligations under these contracts by failing and refusing to defend and indemnify Williams from Plaintiffs' claims and the judgment in the Underlying Lawsuit.  (Id. ¶¶ 99-100.)  Defendants move to dismiss because Plaintiffs failed to allege an insurance contract between Williams and any Defendants and for issues of privity of contract.  (Doc. 20, at 18.)

The Court already found Plaintiffs failed to allege a relationship between Williams and Defendants created by either the Rental Agreement or COI that is equivalent to the relationship between an insurer/insured.  As a result, and based on the above findings, Plaintiffs failed to state a claim for breach of contract for failing and refusing to defend and indemnify Williams.  Thus, Defendants' motion to dismiss is **GRANTED** as to Count III.

   3. Count IV: Attorneys' Fees

Finally, Defendants move to dismiss Count IV because attorneys' fees are ancillary and recoverable only when other damages are also recoverable.  (Doc. 20, at 21 (citations omitted).)  Since Plaintiffs have failed to state a claim, Defendants argue this derivative claim also fails.  (Id.)  The Court agrees.  Thus, Defendants' motion to dismiss is **GRANTED** as to Count IV.

**B. Improper Venue**

Because the Court has granted Defendants' motion to dismiss for failure to state a claim, it declines to address Defendants' arguments for improper venue.  Thus, Defendants' motion is **DENIED AS MOOT** on the basis of improper venue.

**IV. MOTION TO TRANSFER VENUE**

Defendants move, pursuant to 28 U.S.C. § 1406 and Local Rule 2.1, to transfer venue to the Augusta Division of this Court.

(Doc. 21.)  Since the Court has granted Defendants' motion to dismiss Plaintiffs' Complaint in its entirety, the Court declines to address the motion to transfer venue.  Thus, this motion is **DENIED AS MOOT**.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 20) is **GRANTED IN PART AND DENIED AS MOOT IN PART** and this matter is **DISMISSED**.  The Clerk is **DIRECTED** to **DISTRIBUTE** the $25,000.00 currently held in the Court's Registry,[3] plus any accrued interest, to Plaintiffs, **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of September, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[3] Defendants conceded, through their filings and by depositing the funds into the Court's Registry, that Plaintiffs are entitled to $25,000.00 pursuant to Georgia's MFR limit.